# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Central Division)

|  |  |
|---|---|
| In re | Chapter 11 |
| **ARKLOW LIMITED PARTNERSHIP, et al.**[1] | **Case No. 20-40523-CJP** |
| **Debtor** | **Jointly Administered** |

## NOTICE OF PROPOSED ORDER CONFIRMING
## JOINT PLAN OF LIQUIDATION OF ARKLOW LIMITED
## PARTNERSHIP, THE INTERNATIONAL GOLF CLUB, LLC, AND WEALYN, LLC

Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC

(collectively the "Debtors") hereby give notice of their proposed order confirming the *Joint Plan*

*of Liquidation of Arklow Limited Partnership, The International Golf Club, LLC, and Wealyn, LLC*

(the "Plan") [doc. no. 184].  A copy of the proposed order is attached as Exhibit A.

Respectfully Submitted,

Arklow Limited Partnership, The International Golf
Club, LLC and Wealyn, LLC,
By their counsel,


*/s/ D. Ethan Jeffery*
D. Ethan Jeffery (BBO #631941)
Murphy & King, Professional Corporation
One Beacon Street, 21st Floor
Boston, Massachusetts  02108-3107
Telephone:  (617) 423-0400
Facsimile:  (617) 423-0498
EJeffery@murphyking.com

Dated: December 8, 2020

789553

---

[1] The affiliated debtors, along with the last four digits of each debtor's federal tax identification number, are as follows: Arklow Limited Partnership (9883), The International Golf Club, LLC (9792) and Wealyn, LLC (9883).

IN RE: ARKLOW LIMITED PARTNERSHIP, ET AL.
JOINTLY ADMINISTERED
BANKRUPTCY NO. 20-40523-CJP

EXHIBIT A TO

NOTICE OF PROPOSED ORDER CONFIRMING
JOINT PLAN OF LIQUIDATION OF ARKLOW LIMITED
PARTNERSHIP, THE INTERNATIONAL GOLF CLUB, LLC, AND WEALYN, LLC

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Central Division)

| | |
|---|---|
| **In re** | **Chapter 11** |
| **ARKLOW LIMITED PARTNERSHIP,**[1] | **Case No. 20-40523-CJP** |
| **Debtor.** | **Jointly Administered** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING JOINT PLAN OF LIQUIDATION OF ARKLOW LIMITED PARTNERSHIP, THE INTERNATIONAL GOLF CLUB, LLC AND WEALYN, LLC

Arklow Limited Partnership ("Arklow"), The International Golf Club, LLC ("IGC") and Wealyn, LLC ("Wealyn", and together with Arklow and IGC the "Debtors"), the debtors and debtors-in-possession in the above captioned jointly administered proceedings, having filed the *Joint Plan of Liquidation of Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC* (the "Plan") [doc. no. 184] and the *Amended Disclosure Statement With Respect to Joint Plan of Liquidation of Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC* (the "Disclosure Statement") [doc. no. 201]; and the Court having entered an order approving the Disclosure Statement on November 10, 2020 (the "Disclosure Statement Order") [doc. no. 205]; and upon the certificates of service reflecting compliance with the notice requirements of the Disclosure Statement Order (collectively the "Certificates of Service") filed by the Debtor; and a hearing having been held on confirmation of the Plan on December 11,

---

[1] The debtors in these jointly administered cases, along with the last four digits of each debtor's federal tax identification number, are as follows: Arklow Limited Partnership (9883), The International Golf Club, LLC (9792) and Wealyn, LLC (9883).

1

2020 (the "Confirmation Hearing"); and upon the evidence submitted and the arguments of

counsel made at the Confirmation Hearing; and the Court having reviewed all documents in

connection with confirmation of the Plan and having heard all parties desiring to be heard; and

upon the record compiled in the Bankruptcy Case,[2] and after due deliberation and consideration

of all of the foregoing; and sufficient cause appearing therefor; the Court hereby makes the

following findings of fact, conclusions of law and order (the "Confirmation Order"):

**FINDINGS OF FACT:**

     **I.**     **JURISDICTION AND VENUE.**

     A.     This Court has jurisdiction over the Bankruptcy Cases pursuant to 28 U.S.C. §§

1334(a) and 157(b)(1).  Venue of these proceedings and the Bankruptcy Case in this district is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).

     **II.**     **BACKGROUND.**

     B.     The Plan is a joint plan filed by the Debtors.

     C.     On May 4, 2020 (the "Petition Date"), each of the Debtors filed a petition for

relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the

United States Bankruptcy Court for the District of Massachusetts (the "Court").  The Debtors

continue to operate their businesses and manage their assets as debtors in possession as

authorized by Sections 1107(a) and 1108 of the Bankruptcy Code.

     D.     On July 27, 2020, the Office of the United States Trustee (the "US Trustee")

appointed an official committee of unsecured creditors (the "Committee").

---

[2]  Capitalized terms not otherwise defined in this Confirmation Order shall have the meanings attributed to them in the Plan.

789549

E.      The Plan contemplates the sale of substantially all of the Debtors' assets pursuant to an Asset Purchase Agreement in substantially the form attached as <u>Exhibit 1</u> to the Plan (as amended, the "<u>Asset Purchase Agreement</u>") with Escalante – International Golf Club, LLC, a Texas limited liability company ("<u>Escalante International Texas</u>") or its designee, and Escalante International Texas has notified the Debtors that it intends to designate its affiliate, Escalante – International Golf Club, LLC, a Delaware limited liability company ("<u>Escalante International Delaware</u>", and together with Escalante International Texas,  "<u>Escalante</u>") as the purchaser under the Asset Purchase Agreement on or before the Closing Date (as defined in the Asset Purchase Agreement).

F.      The Disclosure Statement Order, among other things, (i) fixed December 4, 2020 as the deadline for submitting ballots on the Plan, (ii) fixed December 4, 2020 as the deadline to object to confirmation of the Plan, and (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.

G.      As evidenced by the Certificates of Service, the Debtors timely mailed the Disclosure Statement, the Plan, the Disclosure Statement Order and a ballot (the "<u>Solicitation Package</u>") to creditors and parties-in-interest.

H.      Notice of the Confirmation Hearing and service of the Solicitation Package and the Disclosure Statement Order was adequate and in accordance with Bankruptcy Rule 2002(b).

I.      The Debtors filed a *Report of Plan Voting with Respect to Joint Plan of Liquidation of Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC* (the "<u>Voting Report</u>") [docket no. ____] showing the results of the voting on the Plan.

J.      The Debtors filed the following affidavits in support of confirmation of the Plan (the "<u>Confirmation Affidavits</u>"): (i) *Affidavit of Craig R. Jalbert in Support of Confirmation of*

3

*Joint Plan of Liquidation of Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC* [doc. no. ___]; (ii) *Affidavit of Jeffrey T. Woolson in Support Sale of Substantially All of The Assets of Arklow Limited Partnership, The International Golf Club, LLC And Wealyn, LLC* (the "*Woolson Affidavit*" [doc. no. 188], and (iii) *Declaration of Robert Silva in Support of the Sale of Substantially All of the Assets of Arklow Limited Partnership, The International Golf Club, LLC and Wealyn, LLC Pursuant to the Debtors' Joint Plan of Liquidation* [doc. no. ___] (collectively the "Affidavits").

K.      The Plan Supplement was filed at docket number 1241 on December 10, 2018.

L.      On December 8, 2020, the Committee filed an objection to confirmation of the Plan (the "Committee Objection") [doc. no. 285].

M.      Except as set forth in paragraph L, no creditors or parties in interest objected to confirmation of the Plan.  The Court concluded the Confirmation Hearing on December 10, 2020.

### III.      COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.

N.      Pursuant to Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan designates various Classes of Claims and Classes of Equity Interests.  The Claims placed in each Class are substantially similar to other Claims in each such Class, and the claims in each Class are treated the same.  The Interests placed in each Class are substantially similar to other Interests in each such Class, and the claims in each Class are treated the same.

O.      The Debtors have complied with all applicable provisions of Section 1123(a) of the Bankruptcy Code.

4

P.      The Plan complies with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code.

Q.      The Debtors have complied with all applicable provisions of the Bankruptcy Code in accordance with Section 1129(a)(2) of the Bankruptcy Code.

R.      The Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code because the Debtors proposed the Plan in good faith and not by any means forbidden by law.

S.      Any payments made or to be made for services or for costs and expenses accruing prior to Confirmation or in connection with the Bankruptcy Case have, to the extent required by the Bankruptcy Code, been approved by, or are subject to the approval of, the Court.  Section 1129(a)(4) of the Bankruptcy Code has therefore been satisfied.

T.      The Debtors have disclosed that Robert Wexler will serve as the Liquidating Agent for the Debtors following confirmation of the Plan, and that Mr. Wexler will receive compensation at his usual hourly rates.  No one has objected to Mr. Wexler acting as the Liquidating Agent.  The Plan therefore complies with Section 1129(a)(5) of the Bankruptcy Code.

U.      With respect to each impaired Class of Claims against or Equity Interests in the Debtors, each holder of an impaired Claim or Interest has accepted or is deemed to have accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Plan therefore complies with Section 1129(a)(7) of the Bankruptcy Code.

789549

V.      All Classes except Classes 2A (Town of Bolton Real Estate Tax Claim), 3A

(Town of Clinton Real Estate Tax Claim) and 4A (Town of Lancaster Real Estate Tax Claim)

were entitled to vote to accept or reject the Plan.  As is evidenced by the Voting Report,

[DESCRIPTION OF VOTING CLASSES] voted to accept the Plan in accordance with Section

1126 of the Bankruptcy Code or are deemed to have accepted the Plan by the failure to vote on

or object to the Plan.  *See In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988)

(nonvoting, non-objecting judgment lien creditor who was only member of class deemed to have

accepted plan of reorganization without further showing that plan did not discriminate unfairly or

that plan was fair and equitable); *see also In re Adelphia Communications Corp.*, 368 B.R. 140,

260-62 (Bankr. S.D.N.Y. 2007) (same).  Because all impaired Classes of Claims have not voted

to accept the Plan, the requirements of Section 1129(a)(8) of the Bankruptcy Code have not been

met.  *See* 11 U.S.C. § 1129(a)(8).  For the reasons set forth below, confirmation of the Plan is

nevertheless appropriate under Section 1129(b) of the Bankruptcy Code.

W.      The Plan provides for treatment of Allowed Administrative Claims, and Priority

Tax Claims in the manner required by Section 1129(a)(9) of the Bankruptcy Code.  The Plan

therefore complies with Section 1129(a)(9) of the Bankruptcy Code.

X.      An impaired Class of Claims has affirmatively voted to accept the Plan without

including any acceptance of the Plan by any Insider.  The Plan therefore complies with Section

1129(a)(10) of the Bankruptcy Code.

Y.      The Plan contemplates the liquidation of the Debtors' assets.  Confirmation of the

Plan is therefore not likely to be followed by the need for reorganization of the Debtors.  The

Plan therefore complies with Section 1129(a)(11) of the Bankruptcy Code.

Z.      Pursuant to Article II, Section 2.2 of the Plan, all quarterly fees due and payable to the Office of the United States Trustee pursuant to Section 1930(a)(6) of Title 28 of the United States Code shall be paid in full on or before the Effective Date.  Section 12.10 of the Plan provides for the timely payment of fees due to the Office of the United States Trustee after the Effective Date and until the Bankruptcy Case is closed.  Accordingly, Section 1129(a)(12) of the Bankruptcy Code is satisfied.

AA.     Sections 1129(a)(13), (a)(14), (a)(15) and (a)(16) of the Bankruptcy Code are not applicable to the Plan.

BB.     The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the requirements of Section 5 of the Securities Act of 1933 (15 U.S.C. § 77e), as amended.  The Reorganized Debtors remain responsible to file post-Effective Date tax returns and pay post-Effective Date taxes in accordance with applicable law.

CC.     The Plan requests confirmation pursuant to Section 1129(b) of the Bankruptcy Code.  The Plan places similarly situated creditors in the same classes, and treats all of the claims in those classes in the same manner with the same recovery.  The Plan, therefore, does not unfairly discriminate with respect to any class of creditors.  The Plan is a liquidating plan that provides a waterfall for the payment of Allowed Claims based upon their seniority under the Bankruptcy Code and applicable non-bankruptcy law.  The Plan provides that the holders of Allowed Claims and Allowed Interests will not receive anything on account of those claims or interests unless the senior classes of claims are paid in full.  Sections 1129(b)(1) and (b)(2)(B)(ii) of the Bankruptcy Code are therefore satisfied.

789549

IV.    **SALE OF ASSETS.**

DD.    The terms of the sale of the Acquired Assets (the "Sale") are set forth in the Asset

Purchase Agreement.  Based on the Affidavits and the other evidence presented at the

Confirmation Hearing, the Court finds as follows:

i.    The Acquired Assets are owned by the Debtors and constitute property of the
Debtors' estates and good title to the Acquired Assets is presently vested in the
Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code,
The Debtors are the sole and rightful owners of the Acquired Assets, without any
competing claims as to ownership, with all right title and interest to transfer and
convey the Acquired Assets to Escalante, and no other Person or entity has any
ownership right, title or interest therein.

ii.    The Debtors have demonstrated compelling circumstances and good, sufficient
and sound business purposes and justifications consistent with their fiduciary
duties for the court to approve the Sale on substantially the terms and conditions
set forth in the Asset Purchase Agreement pursuant to sections 1123(a)(5),
1123(b) and 1141(c) of the Bankruptcy Code.

iii.    The Sale is in the best interests of the Debtors, the Estates, their creditors, and
other parties in interest.

iv.    The Debtors' entry into and performance under the Asset Purchase Agreement are
the result of due deliberation by the Debtors, the Asset Purchase Agreement and
the Purchase Price represents the highest and best offer for the Acquired Assets
and the Purchase Price represents reasonably equivalent value, fair consideration
and fair value for the Acquired Assets under the Bankruptcy Code and any
applicable statutory or common law fraudulent conveyance or fraudulent transfer
standard under the laws of the United States or any state, territory, possession
thereof, or the District of Columbia or any other applicable jurisdiction with laws
substantially similar to the foregoing).  None of the Debtors or Escalante has
entered into the Asset Purchase Agreement or any other related document or
consummated the Sale for an otherwise improper purpose.

v.    The Asset Purchase Agreement was proposed, negotiated, and entered into by
Debtors and Escalante in good faith and from arm's-length bargaining positions.
Escalante has proceeded in good faith in all respects, in that, among others things:
(i) all payments to be made by Escalante under the Asset Purchase Agreement in
connection with the Sale have been disclosed and are reasonable and appropriate,
and (ii) the Purchase Price was not controlled by any agreement among potential
bidders.  Escalante is a good faith purchaser of the Acquired Assets under the
Bankruptcy Code and that there have been no agreements between Escalante and

8

any other entity regarding the Acquired Assets which constitute collusion or fraud.

vi.    In light of the circumstances of these Chapter 11 Cases and the risk of deterioration in the going concern value of the Acquired Assets pending consummation of transactions contemplated by the Asset Purchase Agreement, time is of the essence in (i) consummating the Sale, (ii) preserving the value of the Acquired Assets for the ultimate benefit of the Debtors' estates.

vii.   Each of the Debtors (i) has full organizational power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby and the Sale has been duly and validly authorized by all necessary organizational action of each of the applicable Debtors, (ii) has all of the organizational power and authority necessary to consummate the transactions contemplated by the Asset Purchase Agreement and all other documents contemplated thereby, (iii) has taken all organizational action necessary to authorize and approve the Asset Purchase Agreement and all other documents contemplated thereby and the consummation by the Debtors of the Sale and (iv) needs no consents or approvals, other than those expressly provided for in the Asset Purchase Agreement to consummate the Sale.

viii.  The Asset Purchase Agreement and the documents contemplated thereby are valid and binding contracts between the Debtors and Escalante and are enforceable pursuant to their terms. The transfer of the Acquired Assets to Escalante will be a legal, valid, and effective transfer of the Acquired Assets and, except for the Assumed Liabilities, will vest Escalante with all right, title, and interest of the Debtors in and to the Acquired Assets free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, including, without limitation, rights or claims based on any successor or transferee liability; provided, however, that, nothing in this Confirmation Order shall be deemed or construed as a ruling or determination by this Court that the Assumed Liabilities encumber the Acquired Assets. The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and all of the applicable requirements of such applicable provisions have been complied with in respect of the Sale.

EE.    Escalante would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated in the Asset Purchase Agreement if the Sale of the Acquired Assets to Escalante, and the assumption and assignment of the Assumed Contracts to Escalante, were not free and clear of all Claims and Interests of any kind (except the Assumed Liabilities).

9

789549

FF.     The Asset Purchase Agreement and the Sale and the consummation thereof shall be specifically enforceable against and binding upon (without posting any bond) the Debtors, and any chapter 7 or chapter 11 trustee appointed in these Chapter 11 Cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity.

## V.      ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES.

GG.     IGC is a party to unexpired leases with the parties listed on Exhibit A to the *Notice Regarding Executory Contracts, Unexpired Leases and Cure Amounts* [doc. No 212] (collectively the "Executory Contracts and Leases").  The Plan provides that the Debtors may, pursuant to section 365 and 1123 of the Bankruptcy Code, seek to assume and assign to Escalante any of the Executory Contracts and Leases.  Neither the counter-parties to the Leases, nor any other party, have objected to the assumption of the Leases under the Plan.

HH.     The Debtors have served notice upon the counterparties to the Executory Contracts and Leases (i) that the Debtors may seek to assume and assign the Leases to Escalante, and (ii) of the relevant Cure Amounts (as defined below).  The service of such notice was sufficient and complied with the applicable rule, and no further notice need be given in respect of establishing Cure Amounts for the Executory Contracts and Leases.  Each of the counterparties to the Executory Contracts and Leases has had an opportunity to object to the Cure Amounts and to the assumption and assignment to the Executory Contracts and Leases to Escalante.

II.     The assumption and assignment of the Executory Contracts and Leases pursuant to the terms of the Plan and the Asset Purchase Agreement is in the best interests of the Debtors, their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

789549

JJ.     The amounts set forth under the "Cure Amount" column on <u>Exhibit A</u> to the

*Notice Regarding Executory Contracts, Unexpired Leases and Cure Amounts* [doc. no. 212] are

the sole amounts necessary under sections 365(b)(l)(A) and (B) and 365(f)(2)(A) of the

Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the

Leases (the "<u>Cure Amount</u>").

KK.     No creditors or parties in interest objected to the assumption and assignment of

the Executory Contracts and Leases or the Cure Amounts.  Accordingly, Escalante shall be

deemed to have demonstrated adequate assurance of future performance with respect to any

executory contracts and unexpired leases assumed pursuant to sections 365(b)(1)(C) and

365(f)(2)(B) of the Bankruptcy Code.

LL.     Anti-assignment provisions in any of the Executory Contracts and Leases

including any provisions of the type described in sections 365(b)(2), (e)(1), and (f) of the

Bankruptcy Code, shall not restrict, limit, or prohibit the assumption, assignment, and sale of the

Executory Contracts and Leases and are unenforceable anti-assignment provisions in connection

with the Sale within the meaning of section 365(f) of the Bankruptcy Code.

## <u>ORDER</u>

**ACCORDINGLY, THE COURT HEREBY ORDERS THAT:**

1.     The Plan is confirmed pursuant to Section 1129 of the Bankruptcy Code.

2.     Notwithstanding any otherwise applicable law, immediately upon the entry of this

Confirmation Order, the terms of the Plan and this Confirmation Order are deemed binding upon

all Persons including any and all holders of Claims or Equity Interests, any and all non-debtor

parties to Executory Contracts and Unexpired Leases with the Debtors, and any and all entities

who are parties to or are subject to the releases, waivers, discharges and injunctions under the

789549

Plan and the respective heirs, executors, administrators, successors or assigns of any of the foregoing.

### A.      CLAIMS BAR DATES AND OTHER CLAIMS MATTERS

#### i.      Bar Date for Administrative Expense Claims

3.      All applications for reimbursement of expenses incurred before the Effective Date and all other requests or claims for payment of Administrative Expense Claims incurred on or before the Effective Date under Section 507(a)(1) or 507(b) of the Bankruptcy Code, other than the Professional Fee Claims, shall be filed with the Court on or before thirty (30) days after the Effective Date (the "Administrative Claim Bar Date").  Any holder of an Administrative Expense Claim, other than Professional Fee Claims, that fails to file and serve an application for allowance of such Claim on or before the Administrative Claim Bar Date shall be forever barred from asserting such Administrative Expense Claim against the Debtors, the Reorganized Debtors, the Debtors' estates or any of their property, and such Claim shall be discharged, released and waived in accordance with the Plan.

#### ii.      Bar Date for Professional Fee Claims.

4.      All applications for final compensation and reimbursement of Professional Fee Claims incurred before the Effective Date shall be filed and served on or before thirty (30) days after the Effective Date, unless otherwise ordered by this Court.

#### iii.      Bar Date for Rejection Damages Claims and Related Procedures.

5.      Upon the Effective Date, all of the Debtors' executory contracts and unexpired leases, other than the Leases, shall be rejected as set forth in the Plan.  To the extent any executory contract or unexpired lease is rejected pursuant to an order of the Court, any claim arising from such rejection (a "Rejection Claim") must be filed with the Court and served on

789549

counsel to the Debtors within thirty (30) days following the earlier to occur of: (a) the rejection

of such executory contract or unexpired lease, or (b) the Effective Date.  Any Rejection Claim

that is not filed and served within such time shall be forever barred, and shall not share in any

distributions under the Plan.  The Reorganized Debtors shall have the right to object to any

Rejection Claim.

### B.   IMPLEMENTATION OF THE PLAN; CLOSING OF THE SALE

6.      On the Effective Date, the Debtors shall become the Reorganized Debtors and all

property of each Estate shall re-vest in the respective Reorganized Debtor.

7.      Pursuant to sections 1123(b)(4) and 1141(c) of the Bankruptcy Code, the

Reorganized Debtors are authorized to effectuate the Plan and the Asset Purchase Agreement,

enter into all documents, instruments and agreements (the "Plan Implementation Documents")

necessary to effectuate the Plan and the Asset Purchase Agreement, and to undertake any

transactions reasonably necessary to effectuate the terms of the Plan and the sale and transfer of

the Acquired Assets to Escalante in accordance with the terms of the Asset Purchase Agreement.

The Asset Purchase Agreement and all of the transactions contemplated thereunder are hereby

approved.  No further consents or approvals are required for the Debtors to consummate the

transactions contemplated by the Asset Purchase Agreement.

8.      The failure to specifically reference any particular provision of the Asset Purchase

Agreement or any related document in this Order shall not diminish or impair the efficacy of

such provision, it being the intent of this Court that the Asset Purchase Agreement, any related

document and all other material agreements or arrangements entered into by Escalante and the

Debtors in connection with the Sale and each and every provision, term, and condition thereof be

authorized and approved in its entirety.

13

789549

9.      The sale and transfer of the Acquired Assets, pursuant to the Plan and the Asset
Purchase Agreement, shall vest Escalante with good title to the Acquired Assets and will be a
legal, valid and effective transfer of the Acquired Assets free and clear of all liens, claims,
encumbrances and interests, except to the extent expressly set forth in the Asset Purchase
Agreement.  This Confirmation Order is a determination that, upon the Closing Date (as defined
in the Asset Purchase Agreement), all Liens, Claims and interests of any entity existing on or
against the Acquired Assets prior to the Closing Date have been unconditionally released from
such the Acquired Assets.  Any Liens, Claims and interests in the Acquired Assets shall attach to
the proceeds of the sale to the same extent, priority and validity as existed prior to the Closing.

10.      Except as expressly provided in the Asset Purchase Agreement or this
Confirmation Order, all persons or entities holding Liens, Claims and interests in, to or against
the Acquired Assets shall be, and they hereby are, forever barred from asserting such Liens,
Claims and interests against Escalante, its successors and assigns or the Acquired Assets after the
Closing.

11.      Except as expressly provided in the Asset Purchase Agreement or this
Confirmation Order, Escalante is not assuming any obligations or liabilities of the Debtors.
Escalante shall not be deemed, as a result of any action taken in connection with the Asset
Purchase Agreement, the consummation of the transactions contemplated by the Asset Purchase
Agreement, or the transfer  or operation of the Acquired Assets to (a) be a legal successor, or
otherwise be deemed a successor to the Debtors, (b) have, *de facto* or otherwise, merged with or
into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the
Debtors, including, without limitation, within the meaning of any foreign, federal, state and/or
local law, statute, regulation and/or code.  Except as is expressly set forth in the Asset Purchase

14

789549

Agreement or this Confirmation Order, Escalante shall not have any responsibility for (y) any liability or other obligation of the Debtors or related to the Acquire Assets, and/or (z) any Claims against the Debtors and/or any of the Debtors' predecessors.

12.     Entry of this Confirmation Order by the Court constitutes approval of the assumption of the Leases and their assignment to Escalante pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  The Cure Amounts shall be final and binding on the Debtors, Escalante and each non-debtor party to the Executory Contracts and Leases, and shall not be subject to further dispute based on performance prior to the time of assumption and assignment.  Upon assumption and assignment of the Executory Contracts and Leases, the Debtors and their estates shall be relieved of any liability for breach of the Executory Contracts and Leases, whether occurring before or after such assumption and assignment, in accordance with Section 365(k) of the Bankruptcy Code.  Upon assumption and assignment of the Executory Contracts and Leases, the Debtors and their estates shall be relieved of any obligation to pay any Cure Amount.

13.     The Executory Contracts and Leases shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in the Executory Contracts and Leases (including those of the type described in Sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  All defaults or other obligations of the Debtors under the Executory Contracts and Leases arising or accruing prior to the date of this Confirmation Order (without giving effect to any acceleration clauses or any default provisions of the kind specified in Section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by Escalante by payment of the respective Cure Amounts at the Closing or as soon thereafter as practicable.

15

14.     Each non-debtor party to the Executory Contracts and Leases is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors or Escalante, or the property of any of them, any default existing as of the Closing Date; or, against Escalante, any counterclaim, defense, setoff or any other claim asserted or capable of assertion against the Debtors.

15.     The consideration to be paid by Escalante for the Acquired Assets under the Asset Purchase Agreement is fair and reasonable, is a transfer for reasonably equivalent value and fair consideration, and may not be avoided under Section 363(n) of the Bankruptcy Code.  Escalante is a good faith purchaser as that term is defined in section 363(m) of the Bankruptcy Code and is entitled to all of the protections afforded thereunder.

16.     All persons or entities who are in possession of some or all of the Acquired Assets as of the Closing Date are hereby directed to surrender possession of the Acquired Assets to Escalante at the Closing or as soon as practicable thereafter.  Except with respect to enforcing the terms of the Asset Purchase Agreement and/or this Confirmation Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Asset Purchase Agreement or this Confirmation Order.

17.     The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of this Court; provided, however, that any such modification, amendment or supplement is neither material nor changes the economic substance of the transactions contemplated hereby.  Nothing herein is intended to

16

limit the Debtors' right to seek further Court authorization for any changes to the Asset Purchase

Agreement that are material.

18.     Pursuant to Section 1146(a) of the Bankruptcy Code, neither the Debtors nor the

Reorganized Debtors may be taxed under any law imposing a stamp tax or similar tax for the

issuance, transfer or exchange of a security, or the making or delivery of an instrument of

transfer under a plan confirmed under Section 1129 of the Bankruptcy Code.

19.     Upon the Closing (as defined in the Asset Purchase Agreement), the Purchase

Price shall be paid to counsel to the Debtors and held in a client-funds escrow account of counsel

to the Debtors until such time as it can be transferred to the Liquidating Agent; provided that at

Closing counsel for the Debtors is authorized to: (a) pay the holders of the following Allowed

Claims: (i) Town of Bolton Real Estate Tax Claim, (ii) Town of Clinton Real Estate Tax Claim,

(iii) Town of Lancaster Real Estate Tax, (iv) Florence Weadock Allowed Secured Claim, (v) the

DIP Obligation, and (vi) the CBRE, Inc. commission of $500,000; and (b) segregate an amount

necessary to fund the Carve Out pending the allowance of the claims making up the Carve Out

(the "Carve Out Escrow").  Upon the allowance of the Claims making up the Carve Out, counsel

for the Debtors is authorized to: (y) pay the holders of such Allowed Claims from the Carve Out

Escrow, and (z) to remit the balance, if any, of the Carve Out Escrow after paying such Allowed

Claims to Florence Weadock to be applied to her Allowed Secured Claim.

20.     Except as provided in, and unless expressly waived, released, compromised or

settled in this Confirmation Order, the Plan, any Non-Appealable Order, or in any contract,

document, instrument, release or other agreement entered into or delivered in connection with

this Plan, and in accordance with Section 1123(a)(5)(A) of the Bankruptcy Code: (a) any Claims,

demands, rights and Causes of Action that the Debtors or the Estates may hold against any

789549

Person or entity are fully preserved and vest with the Reorganized Debtors; and (b) neither the

Debtors nor the Reorganized Debtors waive, relinquish, or abandon (nor shall they be estopped

or otherwise precluded from asserting) any right, Claim, cause of action, defense, or

counterclaim.  No preclusion doctrine, including, without limitation, the doctrines of *res*

*judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or

otherwise) or laches shall apply to the Debtors or the Reorganized Debtors by virtue of or in

connection with the confirmation, consummation of effectiveness of the Plan.

21.     The Reorganized Debtors will be responsible for timely payment of fees incurred

pursuant to 28 U.S.C. § 1930(a)(6) until the entry of a final decree in the Bankruptcy Case.  After

Confirmation of the Plan, the Reorganized Debtors will serve the United States Trustee and each

Lender with an unpaid Allowed Secured Claim with a monthly report for so long as the

Bankruptcy Case remains open.  The monthly report shall include the following:

a.     A statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan;

b.     A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the plan;

c.     The Reorganized Debtors' projections as to its continuing ability to comply with the terms of the plan;

d.     A description of any other factors which may materially affect the Reorganized Debtors' ability to consummate the plan; and

e.     An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**C.     DISCHARGE AND INJUNCTION**

22.     Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code

or in or as contemplated by the Plan, the distributions required to be made pursuant to and in

18

789549

accordance with the applicable terms and conditions of the Plan, and the obligations undertaken

by the Debtors in the Plan and the Plan Implementation Documents, are in full and final

discharge as against the Debtors and the Reorganized Debtors of any debt or obligation of the

Debtors that arose before the Effective Date, and any debt of the Debtors of a kind specified in

Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtors or

their Estates of any nature, including, without limitation, any setoff claims and/or any interest

accrued on any Claim from and after the Petition Date, whether or not: (a) a proof of claim based

on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the

Bankruptcy Code, (b) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (c)

the holder of such Claim has accepted the Plan.

23.     All Persons are prohibited and enjoined from taking any action to adversely affect

or interfere with the ability of the Debtors to transfer the Acquired Assets to Escalante in

accordance with the Asset Purchase Agreement and this Order.  As of the Effective Date, all

Persons are permanently enjoined from commencing, continuing or enforcing in any manner or

in any place, any action or other proceeding, whether directly, indirectly, derivatively or

otherwise against the Debtors, their Estates or the Reorganized Debtors, on account of, or

respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged

pursuant to the Plan, except to the extent expressly permitted under the Plan.

24.     Except as otherwise set forth in the Plan or in the Plan Implementation

Documents, neither the Debtors, the Reorganized Debtors, nor any of their respective present or

former members, managers, officers, directors, employees, general or limited partners, advisors,

attorneys, agents, successors or assigns, shall have or incur any liability to any holder of a Claim

or an Interest, or any other party in interest, or any of their respective agents, employees,

19

representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of these Bankruptcy Cases, the pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan occurring prior to the Effective Date, provided that the terms of this paragraph 24 shall not apply to any liability for gross negligence, willful misconduct or ultra vires acts.

### D.    EFFECT OF CONFIRMATION ORDER.

25.    <u>Direction to Government Agencies</u>.  This Confirmation Order and the Plan (including the Asset Purchase Agreement) shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, Federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in any of the Reorganized Debtors assets.

26.    Each and every Federal, state, and local governmental agency, department or other entity is hereby directed to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Plan, the Asset Purchase Agreement and this Confirmation Order.

27.    <u>Retention of Jurisdiction</u>.  In addition to the jurisdiction reserved to the Court under the Plan, the Court shall retain jurisdiction: (a) to interpret and enforce the provisions of this Confirmation Order and the Plan, the Asset Purchase Agreement and each of the Plan

20

Implementation Documents; (b) to interpret, implement and enforce the provisions of this

Confirmation Order; and (c) to hear and determine any and all disputes between the Debtors

and/or any creditor or party-in-interest arising out of or relating to this Confirmation Order, the

Plan and/or the Asset Purchase Agreement; provided, however, that in the event the Court

abstains from exercising or declines to exercise such jurisdiction, or is without jurisdiction, such

abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control,

prohibit, or limit the exercise of jurisdiction of any other court having competent jurisdiction

with respect to any such matter.

28.    Binding Effect.  The terms and provisions of the Plan, including the Asset

Purchase Agreement, and this Confirmation Order shall be binding on and inure to the benefit of

the Debtors, the Reorganized Debtors, the Estates, and their respective affiliates, successors and

assigns, including but not limited to any trustee that may be appointed in the Debtors'

bankruptcy case, and shall be binding in all respects upon any trustee, any affiliate, any third

party, all known and unknown creditors of and holders of equity security interests in any Debtor,

including any holders of Claims (including holders of rights or claims based on any successor or

transferee liability), all counterparties, Escalante and all successors and assigns of Escalante, and

all persons asserting a Lien, and/or interest against or in the Acquired Assets, the Debtors, the

Estates or all or any portion of the assets of the Debtors or the Estates.

29.    The failure to specifically include any particular provisions of the Plan in this

Confirmation Order shall not diminish or impair the efficacy of such provisions.

**E.    MISCELLANEOUS.**

30.    Notice of Confirmation.  As soon as practicable after the Confirmation Date, the

Reorganized Debtors (or their agents) shall give notice of the entry of this Confirmation Order,

21

789549

by United States first-class mail postage prepaid, by hand, or by overnight courier service to: (a) the United States Trustee, (b) each department, agency, or instrumentality of the United States that asserts a claim against the Debtors, (c) entities which requested notices under Bankruptcy Rule 2002, (d) all creditors who have filed proofs of Claim in the Bankruptcy Case, and (e) all creditors who are listed in the Debtors' Schedules who are not listed as holding contingent, un-liquidated or disputed claims (collectively the "Notice Parties").

31.    Notice of Effective Date.  As soon as practicable after the Effective Date, the Reorganized Debtors (or their agents) shall give notice of the Effective Date, substantially in the form of Exhibit A to this Confirmation Order, to the Notice Parties, and shall file such notice with the Court, which shall satisfy the Debtors' obligations under Federal Ruler of Bankruptcy Procedure 2002 and 3020.

32.    Notice; Limitations.  Notwithstanding anything to the contrary contained in this Confirmation Order, no notice or service of any kind will be required to be mailed or made upon any Person to whom: (a) the Debtors mailed a notice of the last date for filing proofs of claim in this Bankruptcy Case; or (b) the Debtors mailed the Solicitation Package, but received any of such notices returned marked "undeliverable as addressed," "moved - left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.

33.    Order in Recordable Form.  This Confirmation Order shall be, and hereby is, deemed recordable in form and any and all recording authorities, including the U.S. Coast Guard, are directed to accept this Confirmation Order for filing.

[this space intentionally left blank]

22

789549

34.    The provisions of Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and

6006(d) staying the effectiveness of this Confirmation Order are hereby waived, and this

Confirmation Order shall be effective, and the parties may consummate the transactions

contemplated by the Asset Purchase Agreement immediately upon entry of this Confirmation

Order.


_____

Hon. Christopher J. Panos
Chief United States Bankruptcy Judge

Dated: December \_\_\_, 2020

23

789549

## **EXHIBIT A**

### **NOTICE OF EFFECTIVE DATE**